# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

Patricia L. Chambers, Rodney Havner, Tina
Ashley, Ruby Willoughby, Homero Bustos,
Damon Chandler, Jacqualine Jarju, Tamara
Goksu, Abdoulaye Sako, Mark Sullivan,
Yvonne Kelly, Corrine Monroe, Dennis
Sherman, Frederick Tillery, Andrew Rice, Lori
Shaffer, Bernard Langhorne, Angela Cross,
Kiarra Smith, Marval Towler, Catherine
Plummer, Tina Bost, Julio Camus, Madelyn
Thomas, Betty Leonard, Felicia Longmire,
Jarman Bryant, Natatsha Casimir, Taronda
Edwards, John Fisher, Tyquind Greer, Mark A.
Baltimore, Frank Betts, Kerilyn Bouvier,
Sheila Brock, Jarrell Chatman, Andrew Clay,
Shelia Coleman, Daniela Collins, Lynda
Crocker, Darlene Cross, Mannie Dale, Linda
G. Dyer, Jeannette Elliott, Tarra Goodwin,
Kandice Hainey, Brooklyn Hawkins, Sheena
Hill, George Januska, Karen Jarvis, Carla
Kendall, Kelly Lanham, Robert Lee Sr.,
Lauren Lovette, Renato Mendieta, Caprice
Mensah, Andrea Nguyen, Ed Parecki, Elsie
Paroz, Nicholas Peno, Cruz Perez Jr., Keith
Plaisted, Anna Quinn, Jeannie Riggan, Janet
Sheldon, Charlotte Streeter, Toney Thompson,
Mark Tomlinson, Christopher Waddell, Crystal
Walden, Tiara Waldon, Vickie McNeal, Daniel
Scott, Jacob Jones, Donald Smith, John
Thompson, Wayne Eric Hopper, Lora Petty,
Beverly Jones, Antoinette Felan, Graciela
Palacios, Herbert John Carlson and Sharon
Hite,

Plaintiffs,

v.

Nationwide Mutual Insurance Company,

Defendant.

Civil Action No.:  _____

**COMPLAINT AND DEMAND FOR
JURY TRIAL**

For this Complaint, the Plaintiffs, Patricia L. Chambers, Rodney Havner, Tina Ashley,

Ruby Willoughby, Homero Bustos, Damon Chandler, Jacqualine Jarju, Tamara Goksu, Abdoulaye Sako, Mark Sullivan, Yvonne Kelly, Corrine Monroe, Dennis Sherman, Frederick Tillery, Andrew Rice, Lori Shaffer, Bernard Langhorne, Angela Cross, Kiarra Smith, Marval Towler, Catherine Plummer, Tina Bost, Julio Camus, Madelyn Thomas, Betty Leonard, Felicia Longmire, Jarman Bryant, Natatsha Casimir, Taronda Edwards, John Fisher, Tyquind Greer, Mark A. Baltimore, Frank Betts, Kerilyn Bouvier, Sheila Brock, Jarrell Chatman, Andrew Clay, Shelia Coleman, Daniela Collins, Lynda Crocker, Darlene Cross, Mannie Dale, Linda G. Dyer, Jeannette Elliott, Tarra Goodwin, Kandice Hainey, Brooklyn Hawkins, Sheena Hill, George Januska, Karen Jarvis, Carla Kendall, Kelly Lanham, Robert Lee Sr., Lauren Lovette, Renato Mendieta, Caprice Mensah, Andrea Nguyen, Ed Parecki, Elsie Paroz, Nicholas Peno, Cruz Perez Jr., Keith Plaisted, Anna Quinn, Jeannie Riggan, Janet Sheldon, Charlotte Streeter, Toney Thompson, Mark Tomlinson, Christopher Waddell, Crystal Walden, Tiara Waldon, Vickie McNeal, Daniel Scott, Jacob Jones, Donald Smith, John Thompson, Wayne Eric Hopper, Lora Petty, Beverly Jones, Antoinette Felan, Graciela Palacios, Herbert John Carlson and Sharon Hite, (collectively "Plaintiffs") by undersigned counsel, state as follows:

## INTRODUCTION

1.     Plaintiffs bring this action for damages resulting from the illegal actions of Nationwide Mutual Insurance Company ("Nationwide" or "Defendant").  Defendant negligently, knowingly, and/or willfully placed automated telemarketing calls using an artificial or prerecorded voice to Plaintiffs' telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

2.     Plaintiffs are each consumers who were on the receiving end of Nationwide's telemarketing campaign.  None of the Plaintiffs have ever had any business relationship with

Nationwide or otherwise provided Nationwide with permission to call their telephones, yet they each have been bombarded with automated telemarketing calls from Nationwide.

3.      The calls at issue were placed either by Nationwide directly, or by the lead-generator marketing company commissioned and hired by Nationwide, Variable Marketing, LLC (a/k/a Instant Insurance Marketing a/k/a Instant Insurance Transfers) ("Variable"). Nationwide and its agents delegated their marketing duties to Variable and ratified the conduct of Variable by accepting the referrals and sales generated by Variable's calls. Nationwide also actively participated in the telemarketing calls through its own actions and the actions of its agents.

## JURISDICTION

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under a United States statute, the TCPA, 47 U.S.C. § 227, *et seq.*

5.      This Court has personal jurisdiction over Nationwide because it regularly engages in business in this District, including making telemarketing calls into this District that form the basis of the claims of the Plaintiffs that reside within this District.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to these claims occurred in this District in that Nationwide's made automated calls directed to Plaintiffs within this District.

## PARTIES

7.      Plaintiff Patricia L. Chambers ("Chambers") is, and at all times mentioned herein was, an adult individual residing in Danville, Arkansas.

8.      Plaintiff Rodney Havner ("Havner") is, and at all times mentioned herein was, an adult individual residing in Danville, Arkansas.

9.     Plaintiff Tina Ashley ("Ashley") is, and at all times mentioned herein was, an adult individual residing in Mabelvale, Arkansas.

10.     Plaintiff Ruby Willoughby ("Willoughby") is, and at all times mentioned herein was, an adult individual residing in Marion, Arkansas.

11.     Plaintiff Homero Bustos ("Bustos") is, and at all times mentioned herein was, an adult individual residing in Santa Ana, California.

12.     Plaintiff Damon Chandler ("Chandler") is, and at all times mentioned herein was, an adult individual residing in Garden Grove, California.

13.     Plaintiff Jacqualine Jarju ("Jarju") is, and at all times mentioned herein was, an adult individual residing in Springfield, Illinois.

14.     Plaintiff Tamara Goksu ("Goksu") is, and at all times mentioned herein was, an adult individual residing in New Britain, Connecticut.

15.     Plaintiff Abdoulaye Sako ("Sako") is, and at all times mentioned herein was, an adult individual residing in Hartford, Connecticut.

16.     Plaintiff Mark Sullivan ("Sullivan") is, and at all times mentioned herein was, an adult individual residing in Cheshire, Connecticut.

17.     Plaintiff Yvonne Kelly ("Kelly") is, and at all times mentioned herein was, an adult individual residing in Baltimore, Maryland.

18.     Plaintiff Corrine Monroe ("Monroe") is, and at all times mentioned herein was, an adult individual residing in Baltimore, Maryland.

19.     Plaintiff Dennis Sherman ("Sherman") is, and at all times mentioned herein was, an adult individual residing in Forest Hill, Maryland.

20.     Plaintiff Frederick Tillery ("Tillery") is, and at all times mentioned herein was, an adult individual residing in Lowell, Massachusetts.

21.     Plaintiff Andrew Rice ("Rice") is, and at all times mentioned herein was, an adult individual residing in Lincoln, Nebraska.

22.     Plaintiff Lori Shaffer ("Shaffer") is, and at all times mentioned herein was, an adult individual residing in Norfolk, Nebraska.

23.     Plaintiff Bernard Langhorne ("Langhorne") is, and at all times mentioned herein was, an adult individual residing in Somerset, New Jersey.

24.     Plaintiff Angela Cross ("Angela Cross") is, and at all times mentioned herein was, an adult individual residing in Philadelphia, Pennsylvania.

25.     Plaintiff Kiarra Smith ("Kiarra Smith") is, and at all times mentioned herein was, an adult individual residing in Folsom, Pennsylvania.

26.     Plaintiff Marval Towler ("Towler") is, and at all times mentioned herein was, an adult individual residing in Philadelphia, Pennsylvania.

27.     Plaintiff Catherine Plummer ("Plummer") is, and at all times mentioned herein was, an adult individual residing in Denton, Texas.

28.     Plaintiff Tina Bost ("Bost") is, and at all times mentioned herein was, an adult individual residing in Milwaukee, Wisconsin.

29.     Plaintiff Julio Camus ("Camus") is, and at all times mentioned herein was, an adult individual residing in Milwaukee, Wisconsin.

30.     Plaintiff Madelyn Thomas ("Thomas") is, and at all times mentioned herein was, an adult individual residing in Brookfield, Wisconsin.

31.     Plaintiff Betty Leonard ("Leonard") is, and at all times mentioned herein was, an adult individual residing in Tallassee, Alabama.

32.     Plaintiff Felicia Longmire ("Longmire") is, and at all times mentioned herein was, an adult individual residing in San Lorenzo, California.

33.     Plaintiff Jarman Bryant ("Bryant") is, and at all times mentioned herein was, an adult individual residing in South Fulton, Georgia.

34.     Plaintiff Natatsha Casimir ("Casimir") is, and at all times mentioned herein was, an adult individual residing in Norcross, Georgia.

35.     Plaintiff Taronda Edwards ("Edwards") is, and at all times mentioned herein was, an adult individual residing in Michigan City, Indiana.

36.     Plaintiff John Fisher ("Fisher") is, and at all times mentioned herein was, an adult individual residing in St. John, Indiana.

37.     Plaintiff Tyquind Greer ("Greer") is, and at all times mentioned herein was, an adult individual residing in Kosciusko, Mississippi.

38.     Plaintiff Mark A. Baltimore ("Baltimore") is, and at all times mentioned herein was, an adult individual residing in Harrogate, Tennessee.

39.     Plaintiff Frank Betts ("Betts") is, and at all times mentioned herein was, an adult individual residing in Roswell, New Mexico.

40.     Plaintiff Kerilyn Bouvier ("Bouvier") is, and at all times mentioned herein was, an adult individual residing in Bristol, New Hampshire.

41.     Plaintiff Sheila Brock ("Brock") is, and at all times mentioned herein was, an adult individual residing in Louisville, Kentucky.

42.     Plaintiff Jarrell Chatman ("Chatman") is, and at all times mentioned herein was, an adult individual residing in Antioch, Tennessee.

43.     Plaintiff Andrew Clay ("Clay") is, and at all times mentioned herein was, an adult individual residing in Memphis, Tennessee.

44.     Plaintiff Shelia Coleman ("Coleman") is, and at all times mentioned herein was, an adult individual residing in Norfolk, Virginia.

45.     Plaintiff Daniela Collins ("Collins") is, and at all times mentioned herein was, an adult individual residing in Sioux Falls, South Dakota.

46.     Plaintiff Lynda Crocker ("Crocker") is, and at all times mentioned herein was, an adult individual residing in Corvallis, Oregon.

47.     Plaintiff Darlene Cross ("Darlene Cross") is, and at all times mentioned herein was, an adult individual residing in Mount Vernon, Ohio.

48.     Plaintiff Mannie Dale ("Dale") is, and at all times mentioned herein was, an adult individual residing in Columbia, Tennessee.

49.     Plaintiff Linda G. Dyer ("Dyer") is, and at all times mentioned herein was, an adult individual residing in Cookeville, Tennessee.

50.     Plaintiff Jeannette Elliott ("Elliott") is, and at all times mentioned herein was, an adult individual residing in Memphis, Tennessee.

51.     Plaintiff Tarra Goodwin ("Goodwin") is, and at all times mentioned herein was, an adult individual residing in Louisville, Kentucky.

52.     Plaintiff Kandice Hainey ("Hainey") is, and at all times mentioned herein was, an adult individual residing in Apple Valley, Minnesota.

53.     Plaintiff Brooklyn Hawkins ("Hawkins") is, and at all times mentioned herein was, an adult individual residing in Lexington, Kentucky.

54.     Plaintiff Sheena Hill ("Hill") is, and at all times mentioned herein was, an adult individual residing in Fayetteville, North Carolina.

55.     Plaintiff George Januska ("Januska") is, and at all times mentioned herein was, an adult individual residing in Chesapeake, Virginia.

56.     Plaintiff Karen Jarvis ("Jarvis") is, and at all times mentioned herein was, an adult individual residing in Lexington, North Carolina.

57.     Plaintiff Carla Kendall ("Kendall") is, and at all times mentioned herein was, an adult individual residing in Euclid, Ohio.

58.     Plaintiff Kelly Lanham ("Lanham") is, and at all times mentioned herein was, an adult individual residing in Louisville, Kentucky.

59.     Plaintiff Robert Lee Sr. ("Lee") is, and at all times mentioned herein was, an adult individual residing in Monticello, Kentucky.

60.     Plaintiff Lauren Lovette ("Lovette") is, and at all times mentioned herein was, an adult individual residing in Cincinatti, Ohio.

61.     Plaintiff Renato Mendieta ("Mendieta") is, and at all times mentioned herein was, an adult individual residing in Fredericksburg, Virginia.

62.     Plaintiff Caprice Mensah ("Mensah") is, and at all times mentioned herein was, an adult individual residing in Radcliff, Kentucky.

63.     Plaintiff Andrea Nguyen ("Nguyen") is, and at all times mentioned herein was, an adult individual residing in Cleveland, Ohio.

64.     Plaintiff Ed Parecki ("Parecki") is, and at all times mentioned herein was, an adult individual residing in Portland, Oregon.

65.     Plaintiff Elsie Paroz ("Paroz") is, and at all times mentioned herein was, an adult individual residing in Riddle, Oregon.

66.     Plaintiff Nicholas Peno ("Peno") is, and at all times mentioned herein was, an adult individual residing in Concord, New Hampshire.

67.     Plaintiff Cruz Perez Jr. ("Cruz") is, and at all times mentioned herein was, an adult individual residing in Wilmington, Delaware.

68.     Plaintiff Keith Plaisted ("Plaisted") is, and at all times mentioned herein was, an adult individual residing in Custer, South Dakota.

69.     Plaintiff Anna Quinn ("Quinn") is, and at all times mentioned herein was, an adult individual residing in Columbia, Tennessee.

70.     Plaintiff Jeannie Riggan ("Riggan") is, and at all times mentioned herein was, an adult individual residing in Oroville, Washington.

71.     Plaintiff Janet Sheldon ("Sheldon") is, and at all times mentioned herein was, an adult individual residing in Middletown, Ohio.

72.     Plaintiff Charlotte Streeter ("Streeter") is, and at all times mentioned herein was, an adult individual residing in Wilson, North Carolina.

73.     Plaintiff Toney Thompson ("Toney Thompson") is, and at all times mentioned herein was, an adult individual residing in Sanford, North Carolina.

74.     Plaintiff Mark Tomlinson ("Tomlinson") is, and at all times mentioned herein was, an adult individual residing in Lenoir, North Carolina.

75.     Plaintiff Christopher Waddell ("Waddell") is, and at all times mentioned herein was, an adult individual residing in Advance, North Carolina.

76.     Plaintiff Crystal Walden ("Walden") is, and at all times mentioned herein was, an adult individual residing in Wilmington, Delaware.

77.     Plaintiff Tiara Waldon ("Waldon") is, and at all times mentioned herein was, an adult individual residing in Cleveland, Ohio.

78.     Plaintiff Vickie McNeal ("McNeal") is, and at all times mentioned herein was, an adult individual residing in Tulsa, Oklahoma.

79.     Plaintiff Daniel Scott ("Scott") is, and at all times mentioned herein was, an adult individual residing in Tulsa, Oklahoma.

80.     Plaintiff Jacob Jones ("Jacob Jones") is, and at all times mentioned herein was, an adult individual residing in Kirkland, Washington.

81.     Plaintiff Donald Smith ("Donald Smith") is, and at all times mentioned herein was, an adult individual residing in Adelanto, California.

82.     Plaintiff John Thompson ("John Thompson") is, and at all times mentioned herein was, an adult individual residing in Litchfield, New Hampshire.

83.     Plaintiff Wayne Eric Hopper ("Hooper") is, and at all times mentioned herein was, an adult individual residing in Mooresville, Indiana.

84.     Plaintiff Lora Petty ("Petty") is, and at all times mentioned herein was, an adult individual residing in Indianapolis, Indiana.

85.     Plaintiff Beverly Jones ("Beverly Jones") is, and at all times mentioned herein was, an adult individual residing in Philadelphia, Mississippi.

86.     Plaintiff Antoinette Felan ("Felan") is, and at all times mentioned herein was, an adult individual residing in Rosharon, Texas.

87.     Plaintiff Graciela Palacios ("Palacios") is, and at all times mentioned herein was, an adult individual residing in Mission, Tecas.

88.     Plaintiff Herbert John Carlson ("Carlson") is, and at all times mentioned herein was, an adult individual residing in San Antonio, Texas.

89.     Plaintiff Sharon Hite ("Hite") is, and at all times mentioned herein was, an adult individual residing in Cedar Park, Texas.

90.     Defendant Nationwide Mutual Insurance Company is an Ohio corporation with corporate headquarters in Columbus, Ohio.  Nationwide is registered to do and is doing business throughout the United States.

91.     None of the Plaintiffs ever had a business relationship with Nationwide and never consented to receive automated telephone calls from Nationwide.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

92.     The TCPA regulates, among other things, the use of automated telephone dialing systems.

93.     47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

> (A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B)     to dial such numbers.

94.     47 U.S.C. § 227(b)(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent of the person being called.

95.     47 U.S.C. § 227(b)(1)(B) prohibits any call to any residential telephone line using

an artificial or prerecorded voice without prior express consent of the person being called.

96.     In 2013, the FCC required prior express **written** consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]

*In re Rules & Regs. Implementing the TCPA*, 27 FCC Rcd. 1830, 1844 (2012) (notes omitted).

# FACTS

## BACKGROUND

97.     Nationwide is a telemarketing company that provides insurance services.  In order to promote its services, Nationwide operates an aggressive contact schedule which bombards unsuspecting consumers, with whom it has no relationship, with robocalls and prerecorded messages.

98.     Nationwide hired the "lead generator" marketing company, Variable, to promote its services.  To do so, Variable placed automated telephone calls to consumers, using a true sequential dialing system, which contained a pre-recorded message informing the recipient of an opportunity to save on their car insurance.

99.     When a consumer answered or returned the automated call, a Variable representative recorded the consumer's name, address, phone number, vehicle information, homeowner status, and driving record.  Variable's representative then matched the caller with a Nationwide agent and transferred the lead to that agent for follow up with the consumer.

100.    Nationwide additionally directly placed automated telemarketing calls to consumers using pre-recorded messages from its own office.

101.    Nationwide, directly or through Variable, has repeatedly placed telemarketing calls using an automatic telephone dialing system and an artificial or prerecorded voice to Plaintiffs' telephones.

102.    Specifically, Nationwide and/or Variable called Plaintiff Chambers at telephone numbers 216-xxx-0981, 216-xxx-0978, 216-xxx-1849 and 216-xxx-1848; Plaintiff Havner at telephone number 479-xxx-0081; Plaintiff Ashley at telephone number 501-xxx-1540; Plaintiff Willoughby at telephone number 870-xxx-6959; Plaintiff Bustos at telephone number 714-xxx-6908; Plaintiff Chandler at telephone number 657-xxx-1095; Plaintiff Jarju at telephone number 217-xxx-0634; Plaintiff Goksu at telephone number 860-xxx-0542; Plaintiff Sako at telephone number 860-xxx-3872; Plaintiff Sullivan at telephone number 203-xxx-9578; Plaintiff Kelly at telephone number 443-xxx-4601; Plaintiff Monroe at telephone number 410-xxx-9047; Plaintiff Sherman at telephone number 410-xxx-7945; Plaintiff Tillery at telephone number 857-xxx-3096; Plaintiff Rice at telephone number 214-xxx-2517; Plaintiff Shaffer at telephone number 402-xxx-8313; Plaintiff Langhorne at telephone number 631-xxx-7051; Plaintiff Angela Cross at telephone number 267-xxx-9950; Plaintiff Kiarra Smith at telephone number 267-xxx-9256; Plaintiff Towler at telephone number 267-xxx-0271; Plaintiff Plummer at telephone number 940-xxx-3054; Plaintiff Bost at telephone number 414-xxx-1049; Plaintiff Camus at telephone number 414-xxx-2346; Plaintiff Thomas at telephone number 414-xxx-9444; Plaintiff Leonard at telephone number 334-xxx-1232; Plaintiff Longmire at telephone number 702-xxx-5138; Plaintiff Bryant at telephone number 404-xxx-4737; Plaintiff Casimir at telephone number 678-xxx-7371; Plaintiff Edwards at telephone number 812-xxx-4097; Plaintiff Fisher at telephone

number 219-xxx-3498; Plaintiff Greer at telephone numbers 662-xxx1669 and 662-xxx-1053; Plaintiff Baltimore at telephone number 865-xxx-4942; Plaintiff Betts at telephone number 575-xxx-7290; Plaintiff Bouvier at telephone number 603-xxx-6869; Plaintiff Brock at telephone numbers 816-xxx-6057 and 317-xxx-8736; Plaintiff Chatman at telephone number 615-xxx-0972; Plaintiff Clay at telephone number 901-xxx-8593; Plaintiff Coleman at telephone number 484-xxx-8785; Plaintiff Collins at telephone number 605-xxx-3429; Plaintiff Crocker at telephone number 541-xxx-3423; Plaintiff Darlene Cross at telephone number 740-xxx-4749; Plaintiff Dale at telephone number 931-xxx-9525; Plaintiff Dyer at telephone number 931-xxx-2406; Plaintiff Elliott at telephone number 901-xxx-9548; Plaintiff Goodwin at telephone number 502-xxx-1343; Plaintiff Hainey at telephone number 612-xxx-4665; Plaintiff Hawkins at telephone number 859-xxx-5545; Plaintiff Hill at telephone number 910-xxx3994; Plaintiff Januska at telephone number 757-xxx-0598; Plaintiff Jarvis at telephone number 336-xxx-1264; Plaintiff Kendall at telephone number 216-xxx-1517; Plaintiff Lanham at telephone number 307-xxx-1502; Plaintiff Lee at telephone number 606-xxx-2610; Plaintiff Lovette at telephone number 513-xxx-9667; Plaintiff Mendieta at telephone number 540-xxx-7362; Plaintiff Mensah at telephone numbers 270-xxx-5560 and 270-xxx-7726; Plaintiff Nguyen at telephone number 216-xxx-8532; Plaintiff Parecki at telephone number 503-xxx-9988; Plaintiff Paroz at telephone number 541-xxx-9585; Plaintiff Peno at telephone number 603-xxx-6079; Plaintiff Perez at telephone number 302-xxx-4535; Plaintiff Plaisted at telephone number 605-xxx-1222; Plaintiff Quinn at telephone number 931-xxx-2151; Plaintiff Riggan at telephone number 509-xxx-7653; Plaintiff Sheldon at telephone number 513-xxx-0672; Plaintiff Streeter at telephone number 252-xxx-5968; Plaintiff Toney Thompson at telephone number 919-xxx-8346; Plaintiff Tomlinson at telephone numbers 828-xxx-3230 and 828-xxx-6545; Plaintiff Waddell at telephone number

336-xxx-5128; Plaintiff Walden at telephone numbers 302-xxx-5966, 215-xxx-5917 and 215-xxx-0179; Plaintiff Waldon at telephone number 216-xxx-1850; Plaintiff McNeal at telephone number 918-xxx-7965; Plaintiff Scott at telephone number 918-xxx-8825; Plaintiff Jacob Jones at telephone number 425-xxx-2393; Plaintiff Donald Smith at telephone number 310-xxx-8763; Plaintiff John Thompson at telephone number 603-xxx-0119; Plaintiff Hopper at telephone number 317-xxx-3618; Plaintiff Petty at telephone number 317-xxx-8947; Plaintiff Beverly Jones at telephone number 601-xxx-8997; Plaintiff Felan at telephone number 346-xxx-2451; Plaintiff Palacios at telephone number 956-xxx-0845; Plaintiff Carlson at telephone number 210-xxx-3097; Plaintiff Hite at telephone number 512-xxx-9020.

103.    At all times mentioned herein, Nationwide, directly or through Variable, called Plaintiffs' residential and/or cellular telephones using an "automatic telephone dialing system" ("autodialer") as defined by 47 U.S.C. § 227(a)(1) and using an artificial voice or pre-recorded message.  When Plaintiffs answered the calls, they were often met with a period of silence before hearing a prerecorded message promoting Nationwide's services.   This is indicative of Nationwide's use of a "predictive dialer."

104.    The Federal Communications Commission has defined ATDS under the TCPA to include "predictive dialers."   *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, at ¶ 12, 2008 WL 65485 (F.C.C.) (2008).

105.    In addition, upon information and belief, the hardware and software combination utilized by Nationwide has the capacity to store and dial sequentially generated numbers, randomly generated numbers or numbers from a database of numbers.

106.    Nationwide did not have any of the Plaintiffs' prior express consent, written or otherwise, to place automated telemarketing calls to Plaintiffs.

### *Nationwide's Liability for the Variable Calls*

107.    The Federal Communication Commission has instructed that sellers such as Nationwide may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

108.    In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

109.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

110.    Variable made the autodialed and prerecorded message calls described herein "on behalf of" Nationwide within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

111.    On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."

112.    More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

113.    The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* At 6587 n. 107.

114.    The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information.

> The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

115.    Nationwide is directly liable for the Variable telemarketing calls because it:

a. actively participated in those calls;

b. paid for the calls that its agents commissioned through Variable; and

c. issued quotations for insurance wholly derived from Variable's calls.

116. Nationwide requires its insurance agents to represent the company to consumers, including non-customers.

117. Nationwide knowingly and actively accepted business that originated through the illegal telemarketing calls from Variable.

118. Moreover, Nationwide maintains control over its agents' actions, both as to telemarketing and other activities by directing the content of their agents' advertising.

119. At all times relevant, Nationwide had control over whether, and under what circumstances, they issued an insurance quote to a prospective customer.

120. After a prerecorded message, calls by Variable on behalf of Nationwide agents would be transferred to a live Variable representative and then forwarded on to an authorized insurance agent of Nationwide.

121. Either during the phone call, or a few minutes after this telephone call (but arising from the call), Nationwide would issue a quotation for auto insurance to the consumer.

122. Nationwide issued insurance policies to persons who accepted such quotations.

123. Nationwide was aware of the nature of the telemarketing campaign that it engaged in because it offered a program where it would pay for a portion of the cost of Variable's "services" for any agents that used those services.

124. Because Nationwide offered to pay for a portion of the cost of Variable for any agents that used the services, it suggested to its agents that hiring Variable and using its telemarketing services was a good way to obtain new customers.

125.    Nationwide also invited Variable to one of its annual conferences, where it suggested that its agents hire Variable.

126.    The purpose of Nationwide' agents are to serve Nationwide by soliciting applications for insurance from consumers on behalf of Nationwide.

127.    Nationwide's agents were, and are, authorized to hire third parties, including Variable, to perform marketing, including telemarketing.

128.    Indeed, the standard contract entered into between Variable and its insurance agency customers, including Nationwide agents, contains a warranty that *the agencies had Nationwide's permission to hire Variable* to make calls on behalf of Nationwide.

129.    As such, Nationwide agents who hired Variable, including the Skipworth Agency, the Allen Agency, and the Nighbert Agency, did so with the actual authority of Nationwide.

130.    Each of the telephone numbers that Variable, acting on behalf of Nationwide, called to contact Plaintiffs with an "artificial or prerecorded voice" made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

131.    Nationwide was legally responsible for ensuring that Variable complied with the TCPA, even if Nationwide did not itself make the calls.

132.    Nationwide knew (or reasonably should have known) that Variable was violating the TCPA on its behalf, and failed to take effective steps within its power to force the telemarketer to cease that conduct.

133.    Nationwide gave its agents substantial power to affect Nationwide's legal relations with third parties, including Variable and consumers generally.

134.     Nationwide cloaked its agents with apparent authority to enter into advertising arrangements on Nationwide's behalf, including lead generation telemarketing through Variable.

135.     Nationwide cloaked its agents in apparent authority specifically as to legal relations between Nationwide's agents and the public, and to hire third parties such as Variable to perform telemarketing, sufficient to support vicarious liability pursuant to the TCPA.

136.     Variable transferred customer information, including the Plaintiffs' information, directly to local insurance agents. Thus, Variable has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. As such, Variable is an apparent agent of Nationwide.

137.     By hiring Variable to make calls on behalf of its agents to generate sales leads, Nationwide "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency. Similarly, by accepting these contacts, Variable "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Nationwide, as described in the Restatement (Third) of Agency. As such, Variable is an agent of Nationwide.

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. § 227, *et seq.*

61.     Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporate them herein by reference.

62.     Defendant negligently placed multiple automated telemarketing calls using an artificial or prerecorded voice to telephone numbers belonging to Plaintiffs without their prior express written consent.

63.     Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA, 47 U.S.C. § 227(b)(1)(A).

64.     Plaintiffs are entitled to an award of $500.00 in statutory damages for each call placed in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

## COUNT II
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT -47 U.S.C. § 227, *et seq.*

65.     Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporate them herein by reference.

66.     Defendant knowingly and/or willfully placed multiple automated telemarketing calls using an artificial or prerecorded voice to telephone numbers belonging to Plaintiffs without their prior express written consent.

67.     Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA, 47 U.S.C. § 227(b)(1)(A).

68.     As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiffs are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that judgment be entered against the Defendant:

A.  Statutory damages of $500.00 for each violation determined to be negligent pursuant to 47 U.S.C. § 227(b)(3)(B);

B.  Treble damages for each violation determined to be willful and/or knowing pursuant to 47 U.S.C. § 227(b)(3)(C);

C.  Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: November 6, 2019

                                  Respectfully submitted,

                                  By <u>/s/ Sergei Lemberg</u>

                                  Sergei Lemberg, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road, 3rd Floor
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424
Attorneys for Plaintiffs